IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LARON MCCLOUD<br><br>on behalf of himself and all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>MCLINTON ENERGY GROUP, L.L.C. and JAYCAR ENERGY GROUP, L.L.C. d/b/a JAYCAR FRAC PLUGS,<br><br>    *Defendant*. | Civil Action No.  5:14-cv-620-XR |

**ORDER**

On this date, the Court considered Defendants' opposed Motion to Transfer Venue (Doc. No. 7) and the response and reply thereto. After careful consideration, the Court will grant the motion to transfer.

**Background**

Plaintiff, Laron McCloud on behalf of himself and all other similarly situated individuals, filed this suit against Defendants, McClinton Energy Group, L.L.C. and its subsidiary Jaycar Energy Group, L.L.C., in the San Antonio Division of the United States District Court for the Western District of Texas.  Plaintiff filed an opt-in consent for Robert Rios along with the complaint.  Plaintiffs allege violations of the Fair Labor Standards Act. Specifically, they allege that Defendants required and/or permitted Plaintiff Laron McCloud and other similarly situated employees to work in excess of forty hours per week but refused

1

to compensate them properly for such hours.  Class members are Defendants' salary-paid plug technicians employed at any time during the three-year period immediately preceding the filing of this suit.

Since the filing of the lawsuit, Matt Wilson, Chad Manning, and Jerry Brewer have also opted in.  McLoud and opt-in Plaintiff Matt Wilson are residents of Brownwood, Texas; opt-in Plaintiff Robert Rios is a resident of Midland, Texas.  The Court is unaware of Manning's and Brewer's residences.  Defendants maintain their primary place of business in Midland, Texas but also maintain operations throughout the United States. Defendants move to transfer venue to the Midland Division of the Western District.

## Parties' Arguments

Defendants move to transfer venue under 28 U.S.C.§ 1404(a) on the grounds that the San Antonio Division has no connection to this case and that transfer to the Midland Division would benefit the convenience of the parties and witnesses.  Specifically, Defendants allege that the Plaintiffs do not reside in San Antonio, that the Plaintiffs were never dispatched for work to any counties within the San Antonio Division, that the Plaintiffs had daily interactions with the Midland Division, that virtually all of the evidence is located in the Midland Division, and that Plaintiffs would not suffer any prejudice by transfer to the Midland Division. Defendants also assert that the San Antonio Division should not be burdened by a case to which it has no connection, that the Midland Division has a significant interest in the parties to the suit, and that it would be unfair to burden the San Antonio Division's residents with this case.

In response to Defendants' motion, Plaintiffs contend that the evidence can be easily obtained in the San Antonio Division, either from Defendant's nearby offices or electronically. Plaintiffs further contend that Defendants have failed to identify the material witnesses who are claimed to reside in the Midland Division, or alternatively, that these material witnesses are presumably employed by Defendants and are under their control and will therefore appear and give testimony wherever the case is pending. Furthermore, Plaintiffs assert that the family members and friends of Plaintiffs, who are likely to have knowledge of relevant facts, are within subpoena range of neither the Midland nor San Antonio Division. Plaintiffs also claim that the cost of attending trial in Midland will be considerably higher for them than it otherwise would be in the San Antonio Division, and that counsel for both Plaintiffs and Defendants could travel to San Antonio with considerably greater ease.

Plaintiffs also argue that this Court has an interest in adjudicating this dispute given Defendants' extensive operations in the Eagle Ford region, near San Antonio. Furthermore, Plaintiffs note that this Judge has considerable past experience with the relevant areas of law. Finally, Plaintiffs note that Judge Robert Junell, sitting in the Midland Division, has announced his intentions to take senior status effective February 2015, which may result in delay in this matter's resolution.

**Legal Standard**

By the authority of 28 U.S.C. §1404(a), the court has discretion to transfer this case to another division where the suit might have been brought "for the convenience of parties and witnesses" and "in the interests of justice." In order to determine whether to transfer venue under §1404(a), the court must conduct a two-step analysis. The court must (1) decide

whether the case might have been brought in the forum to which transfer is sought, and (2) determine whether a transfer is warranted for the convenience of the parties and witnesses, and serves the interests of justice.

The party supporting transfer bears the burden of persuading the court that permitting transfer would amount to more than simply shifting inconvenience from one party to another. *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964). The United States Supreme Court considers a plaintiff's venue selection as his or her "venue privilege," noting that "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations)." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581-82 (2013). As a result, when the court is not satisfied that the transferee venue is clearly more convenient than the plaintiff's chosen venue, the plaintiff's choice should be respected. *In re Volkswagen of Am. (Volkswagen II)*, 545 F.3d 304, 312 (5th Cir. 2008).

The court considers a number of factors, both private and public, in determining whether transferring venue serves the convenience of the parties and witnesses as well as the interest of justice. The "private interest factors" include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* at 314 (citing 28 U.S.C. §1404(a)). The court should also consider the following "public interest factors": (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the familiarity of the forum with the law that will govern the case; and (4)

the avoidance of unnecessary problems in conflict of laws.  *Id*.  None of these factors is individually dispositive.  *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201 (5th Cir. 2004).

## Analysis

**(1) Whether the Case "Might Have Been Brought in the Transferee District"**

A district court is a venue where the action "might have been brought" if it satisfies the statutory venue requirements set out in 28 U.S.C. §1391.  *Hoffman v. Blaski*, 363 U.S. 335, 354 (1960).  Plaintiffs do not dispute that the Midland Division of the Western District of Texas would be a proper venue for this matter.  Therefore, the Midland Division is a venue where the action might have been brought.

**(2) Private Interest Factors**

*(a) Relative ease of access to sources of proof*

Defendants assert that virtually all of the evidence relevant to this matter is located in Midland.  In support of this assertion, Defendants note that opt-in Plaintiff Rios resides in Midland, that many of the material witnesses reside in Midland, and that the relevant records and evidence are in Midland/Odessa.  Defendants note that Plaintiffs McCloud and Rios accepted their jobs and received training in Midland/Odessa and worked out of the Midland/Odessa location.  Defendants assert that the bulk of the relevant records are located in Midland because that office created McCloud's and Rios's work schedule and McCloud and Rios regularly interacted with other employees and customers in Midland/Odessa.  Defendants state that Plaintiffs McCloud and Rios also reported to supervisors in Midland/Odessa daily, and that payroll records, work schedules, job tickets, personnel files, and other records are maintained in Midland/Odessa.

5

Plaintiffs respond that Plaintiff McCloud and opt-in Plaintiff Matt Wilson reside in Brownwood, Texas, which is slightly closer to San Antonio than it is to Midland (187 miles versus 199 miles).  Plaintiffs also claim that while the relevant payroll data may be stored in Midland, the Defendants dispatch employees to sites in numerous states and employees are paid by mail, such that it is therefore less than accurate to claim that "all" payroll records are maintained in Midland.  Furthermore, Plaintiffs claim that Defendants likely keep electronic payroll records, which could be easily transmitted and produced for trial, making access to this evidence equally obtainable in either division.

Defendants' principal offices are in Midland and the relevant sources of proof such as payroll records and time sheets are located in Midland.  Although Plaintiffs state that not "all" the evidence is in Midland, certainly the bulk of it is there, and Plaintiffs point to *no* evidence in San Antonio or within the San Antonio Division.  The question is relative ease of access.  *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).  Ease of access to sources of proof favors Midland.  The fact that records may be electronic and can be easily transported does not change the fact that this factor weighs in favor of transfer.  In *Volkswagen*, the Fifth Circuit noted that the fact "that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." 545 F.3d at 316.  And any evidence located in Brownwood is equally far from Midland and San Antonio.  This factor therefor weighs solidly in favor of transfer.

*(b) Availability of compulsory process to secure the attendance of witnesses*

Defendants assert that many of the material witnesses, particularly their employees with whom Plaintiffs regularly interacted, reside within Midland and therefore within range of

6

the Midland Division's subpoena power. Plaintiffs counter by pointing out that Defendants have not specifically identified who these material witnesses may be, and that these individuals, as employees of the Defendants, are under Defendants' control and will appear to testify if directed to do so by Defendants. Moreover, Plaintiffs argue that the individuals residing in Brownwood who have material information regarding the Brownwood plaintiffs are not within subpoena range of either court.

Although Defendants do not identify any particular witness that resides in Midland, it is clear from the briefing and the circumstances of this case that Defendants' employee witnesses will mostly reside in Midland and non-party witnesses will more likely reside in Midland or its proximity than San Antonio or its proximity. Further, Plaintiff Rios lives in Midland. There is no indication that *any* witness resides in San Antonio or within 100 miles of San Antonio.

A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. With the recent amendments to Rule 45, both courts have the same subpoena power for depositions. Rule 45 empowers both courts to command appearance of non-party witnesses at a deposition so long as the deposition is within 100 miles of where the person resides, is employed, or regularly transacts business in person. FED. R. CIV. P. 45(c)(1)(A).

District courts may subpoena a witness to attend a trial within the state where the person resides, is employed, or regularly transacts business in person, if the person (1) is a party or a party's officer; or (2) would not incur substantial expense. FED. R. CIV. P. 45(c)(B). No witnesses have been identified that reside within 100 miles of San Antonio, and thus any

trial subpoena for a non-party witness would be potentially subject to a motion to quash due to substantial expense. In contrast, the Midland Division would have absolute subpoena power over Midland witnesses subpoenaed to testify in Midland. Although the parties may utilize deposition testimony at trial for witnesses who would incur substantial expense and would be unavailable for trial, the fact that no witnesses have been identified that reside within 100 miles of San Antonio and the availability of absolute subpoena power in Midland for Midland witnesses means that this factor weighs in favor of transfer.

*(c) Cost of attendance for willing witnesses*

When the distance between the existing venue and the proposed venue exceeds 100 miles, as it does here, the Fifth Circuit's 100-mile rule, as set out in *Volkswagen I* and *Volkswagen II*, is applied. *Volkswagen II*, 545 F.3d at 317. As per the 100 mile-rule, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled. *Id*.

Both parties acknowledge that if this case is transferred to Midland, the cost of attendance will be less for those witnesses who reside in Midland and its proximity. However, Plaintiffs argue that (1) the Brownwood residences are slightly closer to San Antonio; and (2) that due to economic factors in Midland, travel to that location and lodging there has become exceedingly expensive, particularly as compared to San Antonio. Defendants counter that while a change in venue may result in an increase in travel for some plaintiffs and their family and friends, that difficulty is more than made up for by the increase in convenience for the Defendants' numerous witnesses who reside in Midland. Defendants do not address the potential increase in lodging and other expenses that may be incurred in Midland.

With regard to the two Plaintiffs who reside in Brownwood, they must travel over 100 miles regardless of whether this case is set in San Antonio or Midland, and the distance to San Antonio is not significantly greater. The fact that two plaintiffs and potential unidentified "family member and friend" witnesses in Brownwood would have to travel approximately 12 miles farther pales in comparison to the fact that at least one Plaintiff (Rios, who resides in Midland) and his friends and family and all Midland area witnesses would have to travel approximately 300 miles to San Antonio. *See In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (noting that certain witnesses would have to travel a significant distance no matter where they testified, in contrast with a substantial number of witnesses residing within the transferee venue who would be unnecessarily inconvenienced by having to travel away from home). Similarly, although two plaintiffs and potential unidentified witnesses outside the Midland area would perhaps have to pay somewhat inflated hotel costs in Midland, that potential amount is small compared to the hotel expenses that would be incurred by the Midland plaintiff (or plaintiffs) and all of the Midland witnesses if they must travel to San Antonio. Therefore, this factor weighs in favor of transfer.

### (d) All other practical problems

Beyond the expressly listed private factors, the court is also required to consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 3. Plaintiffs argue that travel to San Antonio will be considerably easier for both Plaintiffs' and Defendants' counsel than travel to Midland. The Fifth Circuit, however, has held that convenience of counsel is not a factor to be considered in determining the propriety of a motion to transfer venue. *See Volkswagen I*, 371 F.3d at 206 ("The word

'counsel' does not appear anywhere in §1404(a), and the convenience of counsel is not a factor to be assessed in determining the question of transfer under §1404(a)."). Accordingly, this factor is neutral.

**(3) Public Interest Factors**

*(a) Court congestion*

In its analysis of a motion to transfer venue, the court is required to consider the administrative difficultly that may arise as a result of court congestion. *Volkswagen II*, 545 F.3d at 315. "The real issue is not whether transfer will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *In re Greentech, Inc.*, 566 F.3d 1338, 1347 (D.C. Cir. 2009) (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984).

Neither party argues that either division has a clearly more congested docket, but both parties acknowledge that Midland's Judge Junell has announced his intention to take senior status. The effect of Judge Junell's taking senior status is somewhat speculative, though it is reasonable to conclude that it could result in some delay if the case is transferred to the Midland Division. Thus, the Court finds this factor weighs slightly against transfer.

*(b) Local interest in having localized disputes decided at home*

Defendants argue that Plaintiffs have no connection to San Antonio, that the Plaintiffs do have significant contacts with Midland, that the San Antonio Division should not be burdened by a case with which it has no connection, and that the Midland Division has a significant interest in the case and parties. Plaintiffs counter that Defendants maintain locations throughout the United States, including in the Eagle Ford shale region in South

Texas relatively near San Antonio. Plaintiffs also assert that one of the opt-in Plaintiffs worked in Pleasanton, Texas just to the south of San Antonio. Plaintiffs also predict that it is likely that additional San Antonio area residents will enter this matter as plaintiffs in the future.

The Court finds that, on the current record before the Court, this favor weighs in favor of transfer. The events giving rise to this lawsuit occurred primarily in the Midland Division and Defendants' principal places of business are in Midland. Although Plaintiffs argue that Defendants serve customers in the Eagle Ford Shale, at this point no Plaintiff has been identified as having worked for Defendants in the Eagle Ford Shale. Rios's declaration states that he worked in Pleasanton at some point, but he does not expressly state that he worked for Defendants there or within the relevant time period for this litigation. And Defendants dispute that Rios ever worked for them in any county within the San Antonio Division. Thus, at this point in time, any connection to the San Antonio Division is tenuous while the Midland Division has a clear interest in this litigation.

*(c) The familiarity of the forum with the law that will govern the case*

This factor is neutral. Both this Court and the Midland Division are equally capable of hearing and deciding a federal law claim such as the FLSA claims in this case.

*(d) Conflict of law*

Neither party contends that this is a relevant factor. This factor is therefore neutral.

## CONCLUSION

As discussed above, most factors weigh in favor of transfer or are neutral. The only factor potentially weighing against transfer is relative court congestion, based on Judge

Junell's intention to take senior status next year. However, when "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, 566 F.3d at 1347. Accordingly, the Court finds that Defendants have met their burden of demonstrating that the Midland Division is clearly more convenient and that transfer would serve the interests of justice.

Defendants' motion to transfer venue to the Midland Division of the Western District of Texas is GRANTED and this case is TRANSFERRED to the Midland Division.

SIGNED this 14th day of November, 2014.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE